UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMIE M. BUNTON, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:20-cv-01336-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security[1], | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Jamie Bunton requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85. The Court affirms the Commissioner's decision.

**I.      Procedural history**

In June 2018, Bunton filed a Title XVI application for supplemental security income. Tr. 10, 163–64. The Social Security Administration initially denied her application, but Bunton asked for a hearing before an Administrative Law Judge ("ALJ") and testified at the hearing. Tr. 91–95, 98–100, 10. After the hearing, the ALJ denied Bunton's application, Tr. 10–23, and the Appeals Council denied Bunton's request for review, Tr. 1–3. As such, the ALJ's opinion stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.      Decision of the ALJ

The ALJ determined that Bunton had not engaged in substantial gainful activity from her alleged onset date of June 1, 2018.  Tr. 13.  The ALJ found that Bunton has severe impairments of degenerative disc disease of the lumbar spine, bilateral hearing loss, borderline intellectual functioning, depression, anxiety, and posttraumatic stress disorder ("PTSD").  *Id.*  The ALJ further found that Bunton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 13–15.

After considering the entire record, the ALJ determined that Bunton had the residual functional capacity ("RFC") to perform light work with the following limitations: she can occasionally climb on ropes, ladders or scaffolds; she can frequently climb on ramps and stairs; she can occasionally stoop, kneel, crouch, or crawl; she is limited to a quiet environment (which is less than moderate office noise); she should avoid concentrated exposure to work hazards such as unprotected heights and being around dangerous moving machinery; she is able to understand, remember and carry out simple instructions consistent with unskilled work; she can perform only simple decision-making related to basic work functions; she can tolerate only minor, infrequent changes within the workplace; and she can tolerate occasional interaction with co-workers and supervisors, but minimal, superficial interaction with the general public.  Tr. 15.

The ALJ further noted that Bunton has no past relevant work; that Bunton was 35 years old, a "younger person" under the regulations, 20 C.F.R. § 416.963, when she filed the application; and that transferability of job skills was not relevant because Bunton did not have past relevant work.  Tr. 21.  Thus, the ALJ concluded that, considering Bunton's age, education, work experience, and RFC, and together with the finding that a significant number of jobs in the

2

national economy that Bunton can perform do exist, Bunton was not disabled. Tr. 21–22. Bunton appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III.     Legal standard

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1) (2021). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

3

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (internal quotation mark and citation omitted).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3) (emphasis added).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

4

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The Court will not "reverse merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (internal quotation mark and citation omitted).

### IV. Discussion

Bunton first argues that the ALJ committed reversible error by failing to independently, fairly and fully develop the record. Doc. 22 at p. 4. Bunton contends that the record is incomplete because the ALJ failed to order a consultative examination with IQ testing to determine the nature, severity, and duration of Bunton's impairment and her RFC. *Id.* at p. 5. Bunton says that the ALJ could "only" make an informed determination with such a consultative examination. *Id.* at p. 9. Second, Bunton argues that, during the hearing, the ALJ's hypothetical question to the vocational expert did not sufficiently capture Bunton's deficiencies. Specifically, Bunton contends that the hypothetical question did not encompass her estimated borderline intellectual functioning and particular educational deficits. *Id.* at pp. 10–14. Thus, Bunton argues, the medical record is incomplete. *Id.* at p. 15.

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011) (citing *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994)). Additionally, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari,* 258 F.3d 742, 750 (8th Cir. 2001) (quoting *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995)).

Here, the ALJ held a forty-five-minute hearing and, at the time of the ALJ's decision, the record contained over 100 pages of disability-related developmental and medical records, including, among others, multiple psychological assessment reports, hospital and outpatient doctor records, and an audiology assessment. Tr. 71–89, 343–443. When the record contains this variety and amount of evidence, the Eighth Circuit has repeatedly found that the ALJ adequately developed the record. *See, e.g.*, *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (ALJ did not

6

fail to adequately develop the record regarding claimant's work-related limitations because record contained medical consultants' assessments and "were expressly considered by the ALJ"); *Haley*, 258 F.3d at 749–50 (ALJ did not fail to develop the record when record contained reports from treating and consulting physicians, results from medical tests, disability questionnaires, and transcripts from hearings in which claimant was questioned by his attorney and ALJ).  Moreover, as elaborated below, the ALJ relied on significant medical evidence in the record regarding Bunton's physical and mental impairments in reaching her RFC determination.  Accordingly, the Court concludes that substantial evidence in the record supports the ALJ's RFC determination.

In determining Bunton's RFC, the ALJ found that the record does not support more than moderate functional limitations. Tr. 17.  The ALJ acknowledged the "substantial overlap in symptomology between different mental impairments, as well as the subjective nature of mental diagnoses." *Id.*  However, the ALJ based her finding, in part, on Bunton's treatment history for her anxiety, depression, and PTSD, which showed that Bunton required neither intensive outpatient therapy nor inpatient psychiatric hospitalization.  *Id.*  Additionally, because Bunton forwent counseling for a six-month period in 2019, the ALJ concluded that Bunton's primary symptoms were manageable with psychotropic medication prescribed by her primary care provider.  *Id.*  Indeed, the ALJ noted that Bunton's treatment records showed that Bunton improved with medication management, emphasizing Bunton's own report that her symptoms improved with Cymbalta.  *Id.*

The ALJ's review of Bunton's mental-status examinations similarly did not support a finding of more than moderate limitations.  *Id.*  The ALJ reviewed Bunton's psychological evaluation for Medicaid benefits, which showed, on the one hand, that Bunton reported having a "blah" mood; she made one mistake in spelling the word "world" backwards; she made some

7

errors performing serial 3s and simple calculations; and she had some difficulty with "fund [of] knowledge," proverbs, similarities, and social norms, and, on the other hand, that Bunton was cooperative; her affect was neutral; her motor behavior was within normal limits; she denied suicidal or homicidal ideation; her flow of thought was intact; she did not appear to respond to internal stimuli; there were no delusional beliefs elicited; and her immediate and recent memory were intact.  *Id.*  The ALJ found further support in the record from Bunton's primary care provider, who noted that Bunton was pleasant; she was in no acute distress; her cognitive exam was grossly normal; her eye contact was good; she exhibited full range of mood and affect; her speech was clear; and her thought process was logical and goal directed.  *Id.*  As for the mental health treatment notes, Bunton's abnormal clinical signs were typically limited to abnormal mood.

Further, the ALJ found persuasive several aspects of the October 2018 state-agency administrative medical finding.  Tr. 20–21.  First, the ALJ noted Dr. Donna McCall's medical finding that Bunton could perform a wide range of activities of daily living, including light work with postural and environmental limitations.  Tr. 20.  Second, the ALJ found convincing Dr. Barbara Markway's psychological assessment findings that Bunton retained the ability to understand and remember simple instructions; she could carry out simple work instructions; she could maintain adequate attendance and sustain an ordinary routine without special supervision; she could interact adequately with peers and supervisors in a position with limited public interaction; and she could adapt to most usual changes common in a competitive work setting.  Tr. 21.

8

Lastly, the ALJ considered the testimony of a vocational expert, who opined that Bunton could perform the representative occupations of routing clerk and ticketer.  Tr. 22.  The vocational expert based her conclusions on the ALJ's hypothetical question which contemplated:

> a hypothetical individual with the same past work, same age as the claimant - - 35 at the amended onset, 37 now - - and same education - - 8th grade, possibly special education.  And assume the individual could perform work at the light exertional level; occasional climbing on ropes, ladders, or scaffolds; frequent climbing on ramps and stairs; occasional stooping, kneeling, crouching, crawling.  The person is limited to moderate or office noise; and the person should avoid concentrated exposure to work hazards, such as unprotected heights and being around dangerous moving machinery.  The hypothetical individual is able to understand, remember, and carry out simple instructions consistent with unskilled work.  The person can perform only simple decision-making related to basic work functions.  The person could tolerate only minor, infrequent changes within the workplace.  They can tolerate occasional interaction with coworkers and supervisors, but minimal superficial interaction with the general public.

Tr. 51–52.  The ALJ based the hypothetical question upon her determination of Bunton's RFC.  Tr. 22.

Bunton contends that the ALJ erred by refusing multiple requests for additional development regarding Bunton's possible IQ scores.  Doc. 22 at pp. 4–5.  In Bunton's view, this additional development was necessary for the ALJ to make an informed decision.  *Id.* at p. 9.  Bunton relies on a July 2018 psychological evaluation by Dr. Thomas Spencer, who estimated that Bunton has borderline intellectual functioning.  *Id.* at p. 6.  Because borderline intellectual functioning includes individuals with IQs between 71 and 84, and because such individuals, under certain criteria, can meet the Commissioner's Listing of Impairments requirements under Listing 12.05B, Bunton says the ALJ was obligated to request IQ testing.  *Id.* at p. 6.  Bunton points to various components of her testimony and educational records that, in Bunton's view, support her theory because they demonstrate a history of low scholastic achievement in several school subjects.  *Id.* at pp. 4–6.

9

"The ALJ is required to order medical examinations and tests *only if* the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy*, 648 F.3d at 612 (emphasis added) (citing *Conley v. Brown*, 781 F.2d 143, 146 (8th Cir. 1986)).  Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."  *Haley*, 258 F.3d at 749–50 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  Lastly, as previously stated, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  *Id.* at 749 (quoting *Shannon*, 54 F.3d at 448).

Here, the record provides a sufficient basis for the ALJ's decision.  *See* Tr. 10 ("I am denying the claimant's representative's request as there is sufficient medical evidence about the claimant's impairments to make a disability determination. . ." (citing 20 C.F.R. § 416.917)).  As set out in detail above, the record contained Bunton's mental-health treatment records, mental-status-examination reports, as well as various records regarding Bunton's activities of daily life.  Thus, the record contained sufficient information for the ALJ to make an informed decision, and, as explained above, substantial evidence supports the ALJ's determination.  Under these circumstances, the ALJ did not need to order further examination.  *Haley*, 258 F.3d at 749–50.

Even if the ALJ should have sought IQ testing for Bunton, Bunton does not show that the ALJ's failure to obtain such testing prejudiced her.  *Haley*, 258 F.3d at 749 (citing *Shannon*, 54 F.3d at 488).  Bunton claimed she could have met the criteria of Listing 12.05B if she scored a full scale IQ of 71 to 75 and a verbal or performance IQ of 70 or below.  Doc. 22 at p. 6.  However, even if Bunton had scored within those ranges, meeting the listing requirements also required Bunton to show extreme limitations in one, or marked limitations in two, areas of

10

mental functioning. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B.2. However, the ALJ found that Bunton only had moderate limitations in each of the four areas of mental functioning—a finding Bunton does not challenge on appeal. Tr. 11, 13–14. Thus, Bunton fails to show prejudice, and her argument fails on this basis as well. In sum, the ALJ adequately developed the record and substantial evidence supports the ALJ's determination.

Bunton also argues that the ALJ's hypothetical question to the vocational expert during the hearing did not sufficiently capture Bunton's deficiencies. Doc. 22 at p. 10. Thus, Bunton contends, the vocational expert's conclusion that Bunton could perform the jobs of routing clerk and ticketer did not consider Bunton's intellectual, language, and mathematical deficiencies. *Id.* at pp. 10–14. Although Bunton correctly states that "[a] hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies[,]" *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996), Bunton overlooks the fact that the hypothetical question "needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993)).

As explained in detail above, substantial evidence supports the ALJ's RFC determination, and the ALJ's hypothetical question contemplated each of the impairments in the RFC determination. *See Davis v. Shalala*, 31 F.3d 753, 755–56 (8th Cir. 1994) (holding that "a hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ"). The law did not require the ALJ to include any additional limitations in her hypothetical question. Accordingly, because the ALJ's hypothetical question included those impairments "substantially supported by the record as a whole[,]" *Hinchey*, 29 F.3d at 432, this Court rejects Bunton's second argument.

11

V.  **Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England*, 490 F.3d at 1019).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Bunton's [1] Complaint with prejudice.  A separate judgment accompanies this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 28th day of February 2022.

                                                  */s/ Stephen R. Clark*
                                                  STEPHEN R. CLARK
                                                  UNITED STATES DISTRICT JUDGE